440 So.2d 911 (1983)
STATE of Louisiana, Respondent,
v.
Steven M. SUMMERS, Relator.
No. 15712-KW.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
*912 Jack Wright, Jr., New Orleans, for relator.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty., Geary S. Aycock, Asst. Dist. Atty., Monroe, for respondent.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
PRICE, Judge.
Defendant Steven Summers pled guilty to charges of possession of marijuana in violation of La.R.S. 40:966 following the trial court's denial of his pre-trial motion to suppress evidence seized from his residence. He reserved his right to seek a writ of review on the motion to suppress and this court granted his application therefor, finding merit in his contention that the evidence was unlawfully seized.
The following facts were established at the hearing on the motion to suppress. Officers of the Monroe City Police Department knocked on the door of defendant's residence, pursuant to a citizen's complaint identifying the car parked in the driveway of that house as one which had been observed being noisily and recklessly driven. Defendant answered the door and told the officers, in response to their inquiries, that the vehicle was his. When they asked to see his driver's license, Summers went back into the house to get it, leaving the officers outside the door.
They testified they noticed an unusual, somewhat sweet odor while standing at the door, and then stepped inside the house in order to maintain their observation of defendant, at which point the odor became more apparent. Once inside, the officers noted a burning candle and a hand-rolled cigarette on the coffee table and one of them picked it up, handing it to the other.
Defendant had returned by this time and, as one of the officers started to check the house to determine if others were present, Summers grabbed the cigarette and put it in his mouth. A struggle ensued when one of the officers tried unsuccessfully to keep defendant from swallowing the cigarette by putting his hands around his throat.
In the meantime, a young woman had entered the room from another part of the house and witnessed the struggle. This was defendant's girlfriend and co-tenant. She and defendant were both informed of their *913 Miranda rights and defendant was then arrested and placed in the patrol car.
Officers from the Narcotics Unit, whose assistance had been requested by the patrol officers, then questioned the woman and secured her signature on a consent to search form. The ensuing search resulted in the seizure of a small amount of marijuana found in the house.
The trial court found the marijuana admissible as the product of a legal search based on the voluntary consent of a co-tenant. He also held the officers had sufficient cause to step inside the open door to keep the suspect in view and investigate the suspicious odor.
This court finds merit in defendant's contention that the holdings of the trial court are in error and the motion to suppress should have been granted.
It is well settled that a search and seizure conducted without a warrant is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Hernandez, 410 So.2d 1381 (La.1982). Once a defendant shows that a warrantless search occurred, the state bears the burden of affirmatively showing the search is justified under one of these exceptions. State v. Franklin, 353 So.2d 1315 (La.1978).
The officers admitted the defendant did not voluntarily permit their entry into the home. He merely left the front door unattended in order to comply with their request to see his license. In State v. Jones, 358 So.2d 1257 (La.1978), where police officers went to the defendant's apartment to investigate a complaint of loud music and subsequently forced their way in on the basis of their belief that they smelled marijuana smoke, the Louisiana Supreme Court held that imagined smells cannot suffice as probable cause to invade the sanctity of a home. It further stated:
To permit governmental agents to search on such a basis would undermine the right of individuals guaranteed by our state constitution "shall be secure... against unreasonable searches, seizures, or invasions of privacy." La. Const. of 1974, Art. 1, Section 5. The constitutional sanctity of a home against unreasonable government intrusion should not depend on the unfounded imagination of police officers, or the potential for fabrication that thereby would result.
Furthermore, as stated by the Supreme Court in State v. Kuhlman, 293 So.2d 159 (La.1974) in invalidating the warrantless search of defendant's home:
The search of a home without a warrant is banned notwithstanding probable cause to believe that it contains contraband or other seizable articles. Such a search, moreover, is not validated by what it brings to light. The traditions of time immemorial sustains this firm constitutional policy protecting the privacy of the home.
[T]he substantive restriction against the invasion of private homes without a search warrant ... forms a sacred feature of our American heritage. Curtailing the substantive restriction ... impairs the protection of the right of privacy of all the homes in our statethose of both the just and the unjust.
Thus, even if the officers' sense of smell would suffice to support a belief that contraband was present, though we make no such finding here, the warrantless intrusion was still unjustified. We also fail to find any exigent circumstances which might validate the entry where a defendant being questioned regarding a suspected traffic violation is cooperatively going to get a driver's license requested by an officer standing in his doorway. See State v. Abadie, 390 So.2d 517 (La.1980). Thus, unless the search was validated by the consent of defendant's co-tenant, the evidence seized must be suppressed as the product of an illegal search.
Defendant contends the trial court erred in finding that the consent to search given by his co-tenant, Marsha Holloway, was free and voluntary. A valid consent to *914 search is a well recognized exception to the warrant requirement and a voluntary consent, even when given after an illegal detention, is valid under circumstances showing no exploitation of the illegality. State v. Mitchell, 360 So.2d 189 (La.1978).
Where a consent to search is obtained after an illegal detention or entry, the issue is whether the post-arrest consent is the product of free will or the result of exploitation of the previous illegality. State v. Ragsdale, 381 So.2d 492 (La.1980); State v. Mitchell, supra. The consent must be obtained by means sufficiently distinguishable from the illegality to be purged of the primary taint. See Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Bennett, 383 So.2d 1236 at 1242 (La.1980).
In deciding this issue the court should consider not only whether the police informed the one giving the consent to search that he need not comply with their request, but also the temporal proximity between the arrest and the act (of consent) alleged to be coerced, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. State v. Mitchell, supra.
After the struggle between the officers and defendant and his initial detention, the officers had called for and received the assistance of officers of the Narcotics Division, who obtained Miss Holloway's signature on the consent to search form. Though never placed under formal arrest, she was at all times following the initial entry under the direct supervision and control of at least two police officers. She had just witnessed a struggle in which a police officer placed his hands around her boyfriend's neck in a vain attempt to keep him from swallowing, and had seen him arrested and taken into custody.
In her testimony at the hearing on the motion to suppress, Miss Holloway stated she was scared when she signed the form, and the officers admitted that she was upset at the time. She testified that she signed the consent form because one of the officers said that he could get a warrant in 10-20 minutes and she would have to allow the search. She also stated the officers said she would remain under their surveillance while they went for the warrant.
Narcotics Officer McClanahan testified that he told her that even if marijuana was found, he would not arrest her unless he could find some evidence to connect her with it. This could be construed, however, by someone in Miss Holloway's position as a threat that he would assume her possession of any marijuana found if he was forced to get a warrant.
Considering the intrusion of the initial illegal entry into Miss Holloway's home, the short time between that entry and her signing of the consent to search during which she was under police control at all times, the intervening events and the other attendant circumstances mentioned above, we believe the initial illegal entry and search was instrumental in provoking Holloway's consent which was therefore not an act of her free will.
In a case where the question of consent is an issue of fact depending primarily upon an evaluation of the credibility of witnesses, the trial court's determination is entitled to great weight upon review. State v. Dunbar, 356 So.2d 956 (La.1978). In the instant case, however, the trial court committed an error of law in failing to consider the factors relating to the exploitation of the officer's illegal act. The essentially uncontradicted evidence shows that the consent was not sufficiently an act of free will so as to purge the taint of the initial illegality. Therefore, the evidence seized should be suppressed.
For the foregoing reasons, the judgment on the motion to suppress is reversed, and the motion is granted. Defendant's conditional guilty plea is set aside, the conviction reversed, and the case remanded to the trial court for further proceedings.
REVERSED AND REMANDED.